Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
Nate.Kiyam@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, ESTELITA REY, and ZACHARY WILLIAMS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MEAD JOHNSON & COMPANY, LLC, a Delaware limited liability company; MEAD JOHNSON NUTRITION COMPANY, a Delaware corporation; and RECKITT BENCKISER LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: **'24CV1168 L      SBC**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of California's Consumer Legal Remedies Act ("CLRA")<br>(2) Violation of California's Unfair Competition Law<br>(3) Violation of California's False Advertising Law<br>(4) Common Law Fraud, Deceit, and/or Misrepresentation<br>(5) Unjust Enrichment<br>(6) Injunctive Relief<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiffs Chelsea Garland, Estelita Rey, and Zachary Williams ("Plaintiffs"), bring this Complaint individually and on behalf of all persons against Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Reckitt Benckiser LLC (collectively, "Mead Johnson" or "Defendants") to seek redress for Defendants' deceptive and unlawful practices in labeling and marketing Enfagrow PREMIUM Toddler Nutritional Drink and Enfagrow NeuroPro Toddler Nutritional Drink products (collectively, "the Products").

2.     Intending to profit from parents' increasing desire to purchase food for their young children that provides physical health benefits, Defendants misbrand the Products by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"). Moreover, the nutrient content claims on the Products mislead purchasers into believing that the products provide physical health benefits for children under two years of age in order to induce parents into purchasing Defendants' products. In fact, the Products are harmful both nutritionally and developmentally for children under two.

3.     Defendants' misbranding caused Plaintiffs and members of the class to pay a price premium for the Products.

**THE PARTIES**

**Plaintiff Chelsea Garland**

4.     Plaintiff Chelsea Garland ("Plaintiff Garland") is a California citizen residing in San Diego, California.

5.     In or around May 2023, and for about six (6) months thereafter, Plaintiff Garland purchased the Products for her then one (1) year old child from Target, Vons, Walmart, Ralphs, and/or Albertsons. Plaintiff Garland purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age. But for these

representations, Plaintiff Garland would not have purchased the Products.

**Plaintiff Estelita Rey**

6.     Plaintiff Estelita Rey ("Plaintiff Rey") is a California citizen residing in Valley Village, California.

7.     In or around 2022, and for about one (1) year thereafter, Plaintiff Rey purchased Enfagrow for her then one (1) year old child from Target and other retailers. Plaintiff Rey purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age. But for these representations, Plaintiff Rey would not have purchased the Products.

**Plaintiff Zachary Williams**

8.     Plaintiff Zachary Williams ("Plaintiff Williams") is a California citizen residing in Highland, California.

9.     In or around October 2022 and about two (2) to three (3) times per month for about six (6) months thereafter, Plaintiff Williams purchased the Products for his then one (1) year old child from Albertsons. Plaintiff Williams purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age. But for these representations, Plaintiff Williams would not have purchased the Products.

**Defendants Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Reckitt Benckiser LLC**

10.     Defendant Mead Johnson & Company, LLC is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the state of California. Mead Johnson & Company, LLC is headquartered in Evansville, Indiana.

11.     Defendant Mead Johnson Nutrition Company is a corporation organized and in existence under the laws of the State of Delaware and registered

to do business in the states of California. Mead Johnson Nutrition Company is headquartered in Evansville, Indiana.

12. Defendant Reckitt Benckiser LLC is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the state of California. Reckitt Benckiser LLC is headquartered in Parsippany, New Jersey.

## JURISDICTION

13. This is a class action.

14. Members of the proposed Class number more than 100 and at least one plaintiff and one defendant are citizens of different states.

15. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

16. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

17. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District and discovery will show that significant conduct involving Defendants giving rise to the Complaint took place in this District.

## VENUE

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the conduct giving rise to this lawsuit occurred here and Defendants are subject to personal jurisdiction here by conducting business within the State of California. Plaintiffs' counsel's Declaration of Venue, to the extent required under California Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

## FACTUAL ALLEGATIONS

19. Defendants manufacture, distribute, market, advertise, and sell toddler drink products under the brand name "Enfagrow." These products have

packaging that predominately, uniformly, and consistently makes nutrient content claims on the principal display panel of the product labels. A non-exhaustive demonstrative of the Products' labeling, which contain nutrient content claims, is attached hereto as **Exhibit 2**.

20.    The Products are intended for children under the age of two. The Products are labeled with the intended age for each Product on the front label, such as "Toddler" and "1+ Years."

21.    FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3).

22.    Defendants nevertheless make nutrient content claims on the front of the Product labels.

23.    For example, the Products state on the front label, "IMMUNE HEALTH Dual Prebiotics & Vitamins," "Supports BRAIN DEVELOPMENT Omega-3 DHA & Iron," and "22 NUTRIENTS to help support growth."

24.    As described in detail below, Defendants' advertising and labeling of the Products with nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Products at a premium price. These claims deceive and mislead reasonable consumers into believing that the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally.

**Federal and State Regulations Governing Food Labeling**

25.    The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

26.    According to the regulations, nutrient content claims can be expressed

or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

27.    An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further, where information that is required or permitted to be "declared in nutrition labeling, and that appears as part of the nutrition label . . . is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(b)(1).

28.    An implied nutrient content claim is any claim that: "(i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat")." 21 C.F.R. § 1013(b)(2).

29.    The FDA explicitly regulates certain nutrient content claims such as "more" claims. "More" claims use terms such as "more," "added," "plus," or synonyms to describe the level of a nutrient in a food. 21 C.F.R. § 101.54(e). Where the claim is based on a nutrient that has been added to the food, the food must comply with the FDA's Fortification Policy, as stated in 21 C.F.R. § 104.20. *See* 21 C.F.R. § 101.54(e)(ii).

30.    The Fortification Policy only allows for fortification under specific circumstances. The Fortification Policy goes on to list four circumstances where fortification is appropriate:

a.    "[T]o correct a dietary insufficiency recognized by the scientific community. . ."

b.    "[T]o restore such nutrient(s) to a level(s) representative of the food prior to storage, handling and processing. . ."

c.    "[I]n proportion to the total caloric content. . . to balance the vitamin, mineral, and protein content…"

1        d.      "to avoid nutritional inferiority" when replacing a traditional food.

2    21 C.F.R. § 104.20(b)-(e).

3        31.     Identical federal and California laws regulate the content of labels

4    on packaged food and require truthful, accurate information on the labels

5    of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act

6    ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §

7    101, were adopted by the California legislature in the Sherman Food Drug &

8    Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100

9    ("All food labeling regulations and any amendments to those regulations

10   adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or

11   after that date shall be the food labeling regulations of this state."). The federal

12   laws and regulations discussed herein are applicable nationwide to all sales of

13   packaged food products. Additionally, no state imposes different requirements on

14   labeling of packaged food for sale in the United States.

15       32.     California's adoption of food regulations that are identical to

16   the federal regulations stems from the state's "historic police powers" to regulate

17   food labeling, which long-predates the enactment of the FDCA. *See Plumley v.*

18   *Massachusetts,* 155 U.S. 461, 472 (1894) ("if there be any subject over which it

19   would seem the states ought to have plenary control, and the power to legislate

20   in respect to which … it is the protection of the people against fraud and

21   deception in the sale of food products."); *see* also *Florida Lime & Avocado*

22   *Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a

23   legitimate interest in 'the protection of (their) people against fraud and deception

24   in the sale of food products' at retail markets within their borders.") (citation

25   omitted)

26       33.     Although California amended its food labeling laws in 1995 in

27   response to the federal implementation of the 1993 Nutrition Labeling and

28   Education Act, California's regulations of food labels predate the enactment of

the Sherman Law. For example, the current Cal. Health & Safety Code § 110660 invoked herein states "[a]ny food is misbranded if its labeling is false or misleading in any particular." California originally enacted this regulation in 1939, previously found at Cal. Health & Safety Code § 26490. *See People v. 748 Cases of Life Saver Candy Drops*, 94 Cal. App. 2d 599, 607 (1949) (applying section 26490 prohibition on "labeling is false or misleading in any particular" in food labeling claim in 1949).

34.    Under the FDCA, the term "misleading" covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

35.    Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

36.    Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

37.    Representing that the Products will provide certain health benefits by making unlawful nutrient content claims as Defendants' labels do is prohibited by the aforementioned misbranding laws and regulations.

38.    The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not misled as to the actual or relative nutritional value of food products.

**Defendants' Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws**

39.    The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products

1   are intended for children less than 2 years of age and the Products' labels contain
2   nutrient content claims.

3       40.   As described above, the Products at issue in this case are intended
4   for children one year and up as evidenced on the front labels and in the Product
5   titles.

6       41.   Beyond the Product labels, the Products are also sold in the "Baby
7   Food" grocery store aisles, alongside infant formulas. On information and belief,
8   Defendants direct retailers to sell the Products in the baby food aisle.

9       42.   Defendants misbrand the Products by making nutrient content
10  claims that are strictly prohibited by the FDA, and by misleading purchasers into
11  believing that its Products provide physical health benefits in order to induce
12  parents into purchasing the Products.

13      43.   The Product labels contain nutrient content claims that are
14  unlawful. As shown in **Exhibit 2**, the Product labels prominently state nutrient
15  content claims on the front label such as "22 NUTRIENTS to help support
16  growth," "IMMUNE HEALTH Dual Prebiotics & Vitamins," and "Supports
17  BRAIN DEVELOPMENT Omega-3 DHA & Iron." Further, at least one of the
18  Products' back labels states: "Big on value, Enfagrow has **22 nutrients** to support
19  your toddler's optimum development (emphasis in original)" The terms "support
20  growth" in conjunction with "22 NUTRIENTS," "IMMUNE HEALTH" in
21  conjunction "Dual Prebiotics & Vitamins," "BRAIN DEVELOPMENT" in
22  conjunction with "Omega-3 DHA & Iron" and "optimum development" in
23  conjunction with "**22 nutrients** (emphasis in original)" are each implied nutrient
24  content claims. *See* 21 C.F.R. § 101.13(b)(2); *FDA, Guidance for Industry: A*
25  *Labeling Guide for Restaurants and Other Retail Establishments Selling Away-*
26  *From-Home Foods*, 2008 WL 2155726, at *10 (April 2008) (explicit statement
27  about a nutrient alongside synonyms of healthy are implied nutrient content claims).
28      44.   At least one of the Products includes a "more" claim as defined in 21

C.F.R. § 101.54(e). For example, the Enfagrow PREMIUM Toddler Nutritional Drink states: "[i]t has Omega-3 DHA and Iron to help nourish your toddler's brain development, plus dual prebiotics and vitamins, including vitamin C, and zinc to help support immune health." In the context of the claim, "including" is a synonym for "added." Thus, it is a "more" claim, which is a nutrient content claim.

45.   The ingredients of the Products with "more" claims include "Ascorbic Acid" and "Zinc Sulfate." The "more" claims on these Products are based on a nutrient that has been added to the food, and the Products must comply with the Fortification Policy as stated in 21 C.F.R. § 104.20.

46.   Foods intended for children less than two are prohibited from making such nutrient content claims. 21 C.F.R. § 101.13(b)(3). Therefore, the Products are accordingly misbranded.

47.   The Products with "more" claims are also unlawfully fortified. None of the four sanctioned bases for fortification is present here. There is no recognition by the scientific community that there is a dietary insufficiency in Vitamin C or zinc. To the contrary, as the FDA has recognized, dietary deficiency of Vitamin C is "extremely rare in the United States." 56 FR 60624. In addition, per the National Institutes of Health, "[m]ost people in the United States consume adequate amounts of zinc"[1]. Defendants have not added Vitamin C or zinc to its Products to "restore" levels of nutrients to those of the Products before storage. The third basis for fortification relates to foods that are fortified to contain all 21 specified nutrients. *See* 21 C.F.R. § 104.20(d)(3). Defendants' Products do not contain all 21 nutrients. *See* Exhibit 2. The fourth basis for fortification is inapplicable because there is no basis on which to conclude that the Products replace a traditional food. Therefore, the Products violate the Fortification Policy because none of the conditions for fortification have been met.

---

[1] *Zinc Fact Sheet for Health Professionals*, NAT. INST. OF HEALTH, https://ods.od.nih.gov/factsheets/Zinc-HealthProfessional/.

48.     In addition to being unlawful, the nutrient content claims on the Products are also separately misleading.

49.     Reasonable consumers rely on the label claims to decide to purchase the Products for children under two years old. Reasonable consumers shopping in the baby food aisle of a grocery or online retailer see the Products alongside products intended for children as young as six months and purchase the Products for their toddler under the age of two.

50.     The nutrient content claims on the Products mislead reasonable consumers into believing the Products will provide physical health benefits for their children, when in fact the Products are harmful.

51.     The FDA has long warned that nutrient content claims could be misleading. This is especially true in the context of children under two because there are different recommended daily nutrient intakes for children 0-12 months; 1-3 years; and 4 years and above.

52.     The FDA described the purpose of nutrient content claim regulations to be "promoting sound nutrition for the nation's consumers." 56 Fed. Reg. 60421. The FDA relies on the USDA's development of Dietary Guidelines as the basis for encouraging and discouraging the "selection of foods containing low or high levels of certain nutrients as part of an overall diet." *Id.*

53.     The FDA forbids nutrient content claims on products intended for children under two because "the agency lacks evidence that a more restrictive dietary pattern for other nutrients such as sodium or an increased intake for nutrients such as fiber are appropriate and recommended for infants and toddlers." 56 Fed. Reg. 60421; *see* also 58 Fed. Reg. 33731, 33733. Although it has been nearly thirty years, not much has changed regarding the evidence as explained below.

54.     At the time the regulation was implemented, there were Recommended Daily Intakes ("RDI") and Daily Recommended Values ("DRV")

for most nutrients for children under two. *See* 58 Fed. Reg. 2302, 2305 (stating there are RDIs for children under two); 58 FR 2206, 2211 (providing the RDIs). Despite knowing the target daily intake of nutrients for these ages, the FDA concluded that it would not be appropriate to promote nutrients on labels for this young group because "relatively little attention has been given" to the dietary patterns of children under two. 56 Fed. Reg. 60421; *see* also 60 Fed. Reg. 67184, 67191.

55.     The same is true today. For example, there are still RDIs and DRVs for most nutrients for children under two. Just as in 1991, the RDIs and DRVs of nutrients is different for different ages, with a different set of values for children 0-12 months, 1-3 years old, and 4 and above. 21 C.F.R. § 101.9(c)(8)(4). And just as in 1991, in 2020 a USDA working group concluded "[d]eveloping recommended food patterns for infants and toddlers ages 6 to 24 months is challenging. . . in part because the scientific evidence for many questions is relatively scant." Dietary Guidelines Advisory Committee. 2020. *Scientific Report of the 2020 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Agriculture and the Secretary of Health and Human Services*. (hereinafter "2020 Scientific Report").[2]

56.     Children under two have unique dietary needs because they are experiencing huge amounts of growth, but eating relatively little solid food. Therefore, it is important that children under two receive the "most nutrient dense foods available in the household." Dewey KG. *The challenge of meeting nutrient needs of infants and young children during the period of complementary feeding: an evolutionary perspective.* J Nutr. 2013 Dec;143(12):2050-4. doi:10.3945/jn.113.182527. Epub 2013 Oct 16. PMID: 24132575; PMCID: PMC3827643.

57.     The American Academy of Pediatrics ("AAP") published a clinical

_____

[2] U.S. Department of Agriculture, Agricultural Research Service, Washington, DC. Available at: https://doi.org/10.52570/DGAC2020.

report titled "Older Infant-Young Child 'Formulas'" in November 2023 about "the lack of standardization in nomenclature and composition as well as questionable marketing practices" of formulas directed at older infants and toddlers 6 to 36 months of age ("OIYCFs").[3] In it, the AAP explain that "[m]arketing of products in this age group….is often based on vague concerns parents have that their child is not getting some needed micronutrients and that these are uniquely provided by OIYCFs." In fact, the AAP explained, the World Health Assembly has long recognized specialty formula milks for older infants as unnecessary and the AAP, as well as other expert organizations, have recommended "breastfeeding through 2 years of age or longer or whole cow's milk and other acceptable nonformula dairy sources in conjunction with appropriate complementary solid foods as nutritionally adequate."[4] Additionally, the AAP stated that "[c]laims of brain development or immune function have incorrectly shown to influence parents' belief that OIYCFs are healthier than cow milk and promotes their intention to provide OIYCFs to their children."

58.     Defendants' labeling and marketing of their Products capitalize on the exact concerns and beliefs that the AAP describes. For example, the back label of Enfagrow PREMIUM Toddler Nutritional Drink states, "because [toddlers'] tastes and needs are changing at age 1, they may not be getting all the nutrients they require. That's why Enfagrow Premium Toddler Nutritional Drink complements their diet with 22 nutrients including brain-building DHA and iron, plus vitamins and prebiotics to support immune health." As a further example, the front label includes the terms "IMMUNE HEALTH" and "BRAIN DEVELOPMENT" within colorful graphics meant to catch the eye. By echoing the nutritional concerns of parents and including claims and graphics about brain development and immune

---

[3] Fuchs GJ, Abrams SA, Amevor AA, et al. American Academy of Pediatrics, Committee on Nutrition. Older Infant-Young Child "Formulas" Pediatrics. 2023; 152(5):e2023064050, available at: https://www.researchgate.net/publication/374896188_Older_Infant-Young_Child_Formulas (last accessed July 2, 2024).

[4] *Id*.

1   health, Defendants induce and mislead consumers into purchasing their Products

2   for fear that a diet without the Products is nutritionally inadequate for their toddlers.

3      59.    Dietary needs for children under two are also different from those of

4   adults because the optimal diet for children under two also has to address needs

5   beyond mere nutrition, such as developing neural pathways in the brain to establish

6   healthy eating habits and developing gross and fine motor skills. The USDA-

7   recommended diet for children under two includes nutrient-dense foods that

8   promote exposure to new flavors and textures. Dietary Guidelines for Americans,

9   2020-2025. 9th Edition. December 2020. Available at DietaryGuidelines.gov

10  (hereinafter "USDA Dietary Guidelines"). The Dietary Guidelines emphasize that

11  the period of 0-24 months "is key for establishing healthy dietary patterns that may

12  influence the trajectory of eating behaviors and health throughout the life

13  course…Children in this age group consume small quantities of foods, so it's

14  important to make every bite count!" Dietary Guidelines at 53. The AAP also stated

15  in their clinical report, "…in the case of toddlers, developing taste preferences for a

16  mixed diet is ideal."[5] By making nutrient content claims on its packages' front labels,

17  Defendants mislead consumers into believing that foods for children under two

18  should be purchased based on the quantities of the listed nutrients, when other

19  considerations are just as, or more, important.

20     60.    The Guidelines also recommend that children "younger than age 2"

21  completely "[a]void foods and beverages with added sugars." Dietary Guidelines at

22  61. Enfagrow PREMIUM Toddler Nutritional Drink and Enfagrow NeuroPro

23  Toddler Nutritional Drink each have 2 grams of added sugars.

24     61.    For these reasons, Defendants marketing the Products as providing

25  physical health benefits for toddlers being a healthful and safe source of nutrients

26  for babies and toddlers is misleading to reasonable consumers and the Products are

27

28  _____
    [5] *Id*.

actually harmful for children under two both nutritionally and developmentally.

62.     Defendants' marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

        a. Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

        b. Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

        c. Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

63.     Defendants' marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

        a. Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

        b. Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

        c. Section 110765, which makes it unlawful for any person to misbrand any food; and

        d. Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

64.     Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including, but not limited to, 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which have been incorporated by reference in the Sherman Law, by including impermissible nutrient content claims on the labels of foods intended for children less than 2 years of age, including misleading claims on the labels, and fortifying the foods without complying with the Fortification Policy.

65.     A reasonable consumer would rely on the label claims to decide to purchase the Products. For example, Defendants' nutrient content claims mislead a reasonable consumer to believe the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally.

66.     Defendants intend for and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done on the Product labels.

67.     Because consumers pay a price premium for Products that have a nutrient content claim, by labeling the Products as providing nutritional value, Defendants are able to both increase its sales and retain more profits.

68.     Defendants engaged in the practices complained of herein to further its private interests of: (i) increasing sales of their Products while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for the Products because consumers will pay more for them due to consumers' demand for healthful products for their children.

69.     The market for toddler food and drink products continues to grow, and because Defendants know consumers rely on the nutrient content claims

on the Product labels, Defendants have an incentive to continue to make such misleading and unlawful representations.

70. Defendants continue to launch new product lines with nutrient content claims to maintain their competitive edge, making it likely that Defendants will continue to misleadingly advertise their Products.

**Plaintiffs' Experiences**

**Plaintiff Chelsea Garland**

71. Plaintiff Garland is a California citizen residing in San Diego, California.

72. In or around May 2023, and for about six (6) months thereafter, Plaintiff Garland purchased the Products for her then one (1) year old child from Target, Vons, Walmart, Ralphs, and/or Albertsons. Plaintiff Garland purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age.

73. As a result of Defendants' unlawful and misleading nutrient content claims, the Products have no, or at a minimum, a much lower value to Plaintiff Garland.

74. Plaintiff Garland not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid for them if they did not contain nutrient content claims.

75. Had Defendants not unlawfully and misleadingly labeled the Products, Plaintiff Garland would not have purchased them or, at a very minimum, she would have paid less for the Products.

76. Plaintiff Garland regularly shops at stores and online retailers where the Products and other baby food products are sold.

**Plaintiff Estelita Rey**

77. Plaintiff Rey is a California citizen residing in Valley Village, California.

78.     In or around 2022, and for about one (1) year thereafter, Plaintiff Rey purchased Enfagrow for her then one (1) year old child from Target and other retailers. Plaintiff Rey purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age.

79.     As a result of Defendants' unlawful and misleading nutrient content claims, the Products have no, or at a minimum, a much lower value to Plaintiff Rey.

80.     Plaintiff Rey not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid for them if they did not contain nutrient content claims.

81.     Had Defendants not unlawfully and misleadingly labeled the Products, Plaintiff Rey would not have purchased them or, at a very minimum, she would have paid less for the Products.

82.     Plaintiff Rey regularly shops at stores and online retailers where the Products and other baby food products are sold.

**Plaintiff Zachary Williams**

83.     Plaintiff Williams is a California citizen residing in Highland, California.

84.     In or around October 2022 and about two (2) to three (3) times per month for about six (6) months thereafter, Plaintiff Williams purchased the Products for his then one (1) year old child from Albertsons. Plaintiff Williams purchased the Products in reliance on the representations on the packaging that the Products provide physical health benefits for children under two years of age.

85.     As a result of Defendants' unlawful and misleading nutrient content claims, the Products have no, or at a minimum, a much lower value to Plaintiff Williams.

86.     Plaintiff Williams not only purchased the Products because the

labels contained nutrient content claims, but he also paid more money for the Products than he would have paid for them if they did not contain nutrient content claims.

87.   Had Defendants not unlawfully and misleadingly labeled the Products, Plaintiff Williams would not have purchased them or, at a very minimum, he would have paid less for the Products.

88.   Plaintiff Williams regularly shops at stores and online retailers where the Products and other baby food products are sold.

**CLASS ACTION ALLEGATIONS**

89.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

90.   The Class and Sub-Classes are defined as:

> **Class**:   All persons in the State of California who purchased the Products between 2021 and the present.

> **CLRA Sub-Class**:  All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

91.   Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

92.  <u>Numerosity</u>:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control.

93.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased the Products designed, manufactured, and distributed by Defendants. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred the cost of purchasing the Products. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

94.  <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

(b)  Whether Defendants' actions violate Federal and California laws invoked herein;

(c)  Whether labeling the Products with unlawful nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such unlawful claims;

(d)  Whether Defendants' advertising and marketing regarding the  Products  was likely to deceive reasonable consumers;

| | | |
|---|---|---|
| 1 | (e) | Whether representations regarding the nutrient content of |
| 2 | | the Products are material to a reasonable consumer; |
| 3 | (f) | Whether Defendants' engaged in the behavior knowingly, |
| 4 | | recklessly, or negligently; |
| 5 | (g) | The amount of profits and revenues earned by Defendants |
| 6 | | as a result of the conduct; |
| 7 | (h) | Whether class members are entitled to restitution, injunctive |
| 8 | | and other equitable relief and, if so, what is the nature (and |
| 9 | | amount) of such relief; and |
| 10 | (i) | Whether class members are entitled to payment of actual, |
| 11 | | incidental, consequential, exemplary and/or statutory damages |
| 12 | | plus interest thereon, and if so, what is the nature of such relief. |

95.    <u>Adequate Representation</u>:    Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, and Plaintiffs intend to vigorously prosecute this action.

96.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will

conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION

**Violation of California's Consumer Legal Remedies Act ("CLRA"),**

**Cal Civ. Code § 1750,** *et seq.*

**(On behalf of the CLRA Sub-Class)**

97.     Plaintiffs incorporate by reference each allegation set forth above.

98.     Plaintiffs bring this cause of action individually and on behalf of the members of the CLRA Sub-Class.

99.     Defendants are "person[s]" as defined by the CLRA. Cal. Civ. Code § 1761(c).

100.    Plaintiffs and CLRA Sub-Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

101.    The purchase of the Products by Plaintiffs and the CLRA Sub-Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

102.    The Products constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code § 1761(a) and (b).

103.    Plaintiffs and the CLRA Sub-Class Members purchased the Products primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

104.    Defendants' representations, active concealments, omissions, and failures to disclose regarding the Products violated the CLRA in the following ways:

105.    Defendants' acts and practices, set forth in this Class Action Complaint, led Plaintiffs and other similarly situated consumers to falsely believe that the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and

developmentally. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8) of the CLRA.

106. In violation of California Civil Code §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold.

107. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

108. In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

109. In violation of California Civil Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact.

110. Plaintiffs and the CLRA Sub-Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and equitable relief under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

111. Plaintiffs provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a), via letter dated April 30, 2024. Defendants failed to provide appropriate relief for their violations of the CLRA. Accordingly, California Plaintiffs now seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that they seek on behalf of themselves and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On behalf of the Class)**

112.   Plaintiffs incorporate by reference each allegation set forth above.

113.   Plaintiffs bring this cause of action individually and on behalf of Class Members.

114.   California Business & Professions Code § 17200 prohibits "unfair competition" including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Defendants engaged in conduct that violated each of this statute's three prongs.

115.   Defendants have engaged, and continue to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation, including unlawful nutrient content claims on the Products' labels and thereby selling Products that were not capable of being sold or held legally and which were legally worthless.

116.   Defendants have engaged, and continue to engage, in unlawful practices  as described herein, in violation of the UCL, by, without limitation, violating the following laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110665, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343, *et seq.* and FDA regulations, including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which are incorporated into the Sherman Law (California Health &

1    Safety Code §§ 110100(a), 110380, and 110505).

2        117.   Defendants have engaged, and continue to engage, in fraudulent

3    practices as described herein, in violation of the UCL, by, without limitation,

4    including unlawful nutrient content claims on the Product labels and thereby

5    selling Products that were not capable of being sold or held legally and which were

6    legally worthless.

7        118.   Plaintiffs and those similarly situated relied to their detriment on

8    Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs

9    and those similarly situated been adequately informed and not deceived by

10   Defendants, they would have acted differently by, without limitation: (i) declining

11   to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less

12   for the Products.

13       119.   Defendants' acts and omissions are likely to deceive the general

14   public.

15       120.   Defendants engaged in these deceptive and unlawful practices to

16   increase their profits. Accordingly, Defendants have engaged in unlawful trade

17   practices, as defined and prohibited by section 17200, *et seq.* of the California

18   Business and Professions Code.

19       121.   The aforementioned practices, which Defendants have used to

20   their significant financial gain, also constitute unlawful competition and provide

21   an unlawful advantage over Defendants' competitors as well as injury to the

22   general public.

23       122.   As a direct and proximate result of such actions, Plaintiffs and the

24   other Class members, have suffered and continue to suffer injury in fact and

25   have lost money and/or property as a result of such deceptive and/or unlawful

26   trade practices and unfair competition in an amount which will be proven at trial,

27   but which is in excess of the jurisdictional minimum of this Court. In particular,

28   Plaintiffs and those similarly situated paid a price premium for the Products,

1   i.e., the difference between the price consumers paid for the Products and the

2   price that they would have paid but for Defendants' misrepresentation. This

3   premium can  be determined by using econometric or statistical techniques such

4   as hedonic regression or conjoint analysis. Alternatively, Plaintiffs and those

5   similarly situated will seek a full refund of the price paid upon proof that the sale

6   of the Products was unlawful.

7        123.   As a direct and proximate result of such actions, Defendants have

8   enjoyed, and continue to enjoy, significant financial gain in an amount which

9   will be proven at trial, but which is in excess of the jurisdictional minimum of

10   this Court.

11        124.   Plaintiffs seek, on behalf of themselves and those similarly situated,

12   equitable relief, including restitution for the premium and/or the full price that they

13   and others paid to Defendants as result of Defendants' conduct. Plaintiffs and

14   the Class lack an adequate remedy at law to obtain such relief with respect to

15   their "unfairness" claims in this UCL cause of action, because there is no cause of

16   action at law for "unfair" conduct. Plaintiffs and the Class similarly lack an

17   adequate remedy at law to obtain such relief with respect to their "unlawfulness"

18   claims in this UCL cause of action because the Sherman Law (Articles 3 and 6)

19   and the Federal laws and regulations referenced herein do not provide a direct

20   cause of action, so Plaintiffs and the Class must allege those violations as predicate

21   acts under the UCL to obtain relief.

22        125.   Plaintiffs also seek equitable relief, including restitution, with respect

23   to their UCL unlawfulness claims for violations of the CLRA, FAL and her

24   UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2),

25   Plaintiffs make the following allegations in this paragraph only hypothetically and

26   as an alternative to any contrary allegations in their other causes of action, in the

27   event that such causes of action do not succeed. Plaintiffs and the Class may be

28   unable to obtain monetary, declaratory and/or injunctive relief directly under

other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class).

126.  Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

127.  Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**THIRD CAUSE OF ACTION**

**False Advertising, Bus. and Prof. Code § 17500,** *et seq.*

**(On behalf of the Class)**

128.   Plaintiffs incorporate by reference each allegation set forth above.

129.   Plaintiffs bring this cause of action individually and on behalf of Class Members.

130.   Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

131.   Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing were physically beneficial for their young children.

132.   Plaintiffs and those similarly situated relied to their detriment on Defendants' misleading and deceptive advertising and marketing practices, including each of the unlawful claims set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

133.   Defendants' acts and omissions are likely to deceive reasonable consumers and the general public.

134.   Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

135.   The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as

injury to the general public.

136. As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' false, deceptive and misleading advertising.

137. Plaintiffs seek equitable relief, including restitution, with respect to their FAL claims.

138. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

139. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated and/or other California consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**FOURTH CAUSE OF ACTION**

**Common Law Fraud, Deceit, and/or Misrepresentation**

**(On behalf of the Class)**

140.   Plaintiffs incorporate by reference each allegation set forth above.

141.   Plaintiffs bring this cause of action individually and on behalf of Class Members.

142.   Defendants have fraudulently and deceptively included unlawful nutrient content claims on the Product labels.

143.   The unlawfulness of the claims was known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made. Defendants' unlawful statements concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products. In misleading Plaintiffs and not so informing them, Defendants breached their duty to Plaintiffs. Defendants also gained financially from, and as a result of, their breach.

144.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful representations. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

145.   By and through such fraud, deceit, and unlawful representations, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

146.   Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' unlawful representations, and, accordingly, were damaged by Defendants.

147. As a direct and proximate result of Defendants' unlawful representations, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

148. Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

### FIFTH CAUSE OF ACTION

### For Unjust Enrichment

### (On Behalf of the Class)

149. Plaintiffs incorporate by reference each allegation set forth above.

150. Plaintiffs bring this cause of action on behalf of themselves and the Class.

151. Defendants have received and retained a benefit from Plaintiffs and Class Members, and inequity has resulted.

152. Defendants have been unjustly enriched in retaining the revenues from Plaintiffs' and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendants sold Products that were not capable of being sold or held legally and which were legally worthless. Plaintiffs paid a premium price for the Products.

153. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution and nonrestitutionary disgorgement of profits to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

154. Plaintiffs, therefore, seek an order requiring Defendants to pay nonrestitutionary disgorgement of profits and make restitution to them and other members of the Class.

## SIXTH CAUSE OF ACTION

**Violation of California's False Advertising Law, Bus. & Prof. Code § 17501**

**(On Behalf of the Class)**

155.    Plaintiffs incorporate by reference each allegation set forth above.

156.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

157.    Plaintiffs bring this cause of action for restitution pursuant to Section 17535 of the Business and Professions Code. Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action. Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

158.    Defendants violated Section 17501 of the Business and Professions Code by through their misleading and deceptive advertising and marketing practices.

159.    Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing were physically beneficial for their young children.

160.    Defendants violated Section 17501 with actual or constructive knowledge that their advertisements were untrue or misleading.

161.    Defendants violated Section 17501 in order to induce Plaintiffs and the class members to purchase the Products based on the false impression that they are physically beneficial for their young children.

162.    Plaintiffs and the class members reasonably relied on Defendants' representations and/or omissions made in violation of Section 17501, and were thereby induced to pay more for Defendants' Products and make purchases they would not have otherwise made.

163.   As a direct and proximate result of Defendants' violations of Section 17501, Defendants have improperly acquired money from Plaintiffs and the class members. As such, Plaintiffs request this Court order Defendants to restore this money to them and all class members.

**RELIEF REQUESTED**

164.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendants, as follows:

(a)   An order certifying the proposed Class and Sub-Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)   An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

(c)   An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(d)   Any and all remedies provided pursuant to the causes of action and statutes alleged herein;

(e)   A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products or make full restitution to Plaintiffs and Class Members;

(f)   An award of attorneys' fees and costs, as allowed by law;

(g)   An award of pre-judgment and post-judgment interest, as provided by law;

(h)   Leave to amend the Complaint to conform to the evidence produced at trial; and

(i)   Such other relief as may be appropriate under the

circumstances.

## DEMAND FOR JURY TRIAL

165.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern District of California Local Rule 38.1, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.

Dated:  July 5, 2024                              Respectfully submitted,

                                                  Capstone Law APC


                                          By: /s/ Laura E. Goolsby
                                              Tarek H. Zohdy
                                              Cody R. Padgett
                                              Laura E. Goolsby
                                              Nathan N. Kiyam

                                              Attorneys for Plaintiffs