# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>MEAD JOHNSON & COMPANY, LLC, *et al.*,<br><br>  Defendants. | Case No. 24-cv-1168-BAS-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br>**(ECF No. 8)** |

Plaintiffs, on behalf of themselves and others similarly situated, file a Complaint against Mead Johnson & Co., LLC; Mead Johnson Nutrition Co.; and Reckitt Benckiser LLC ("Defendants") alleging violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"); California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); California False Advertising Law, Cal. Bus. & Prof. Code § 17500, ("FAL"); Common Law Fraud, Deceit, or Misrepresentation; Unjust Enrichment; and California False Advertising Law, Cal. Bus. & Prof. Code § 17501. (ECF No. 1 ("Compl.").)

## I.   BACKGROUND

The Complaint alleges that Defendants used misleading labels on two products: Enfagrow PREMIUM Toddler Nutritional Drink and Enfagrow NeuroPro Toddler Nutritional Drink ("Products"). According to the Complaint the labels "mislead purchasers into believing that the products provide physical health benefits for children under two

years of age" when, in fact, "the Products are harmful both nutritionally and developmentally for children under two." (Compl. ¶ 2.) Specifically, the Products, intended for toddlers, include labels stating, "IMMUNE HEALTH Dual Prebiotics & Vitamins," "Supports BRAIN DEVELOPMENT Omega-3 DHA & Iron," and "22 NUTRIENTS to help support growth." (*Id.* ¶¶ 20, 23.) These labels "mislead [] purchasers into believing that [the] Products provide physical health benefits." (*Id.* ¶ 42.)

The Complaint alleges the Product labels violate the nutrient content claims in federal regulations including those for children under the age of two and include "more" claims, which imply that a nutrient has been added to the Product, without complying with the Food and Drug Administration ("FDA") Fortification Policy. (*Id.* ¶¶ 42–45.)

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) arguing (1) the Complaint fails to state fraud-based claims for relief under Rule 9 because Plaintiffs fail to allege how the labeling statements are either false or misleading; (2) the Complaint fails to state a claim that the labels are unlawful because (a) the labels contain no nutrient content claims, (b) the Products are not specifically intended for children under two, (c) the labels do not make "more" claims subject to the Fortification Policy, and (d) if the FDA does regulate the Products' labeling statements then this violates the First Amendment; (3) the Complaint fails to plead a former price advertising claim under the FAL; and (4) Plaintiffs lack standing to seek injunctive relief. (ECF No. 8.) Plaintiffs respond (ECF No. 11) and Defendants reply (ECF No. 12 ). The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1).

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty*

*Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A court need not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Claims grounded in fraud must not only satisfy Rule 12(b)(6)'s plausibility pleading standard but also the heightened pleading requirements of Rule 9(b).  *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1922 (2025).  To satisfy the particularity requirement of Rule 9(b), the circumstances constituting the alleged fraud must "be 'specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation modified)).  A plaintiff's claims must allege the "who, what, when, where, and how of the misconduct

charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 106 F.4th at 852 (citation modified).

## III.  ANALYSIS

### A.  Request for Judicial Notice

Defendants request judicial notice of their Exhibit A, a copy of the Nutrition Facts also on the Products' labels. (ECF No. 8-2.) In their request, Defendants aver the label is "a proper subject for judicial notice because the document is admissible under the incorporation-by-reference-doctrine [sic]." (*Id.* at 1.) This argument conflates two distinct concepts: judicial notice and incorporation-by-reference.

<u>Judicial notice</u>. Judicial notice is established by Federal Rule of Evidence 201 and permits the court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). Therefore, a court may take judicial notice of matters of public record, but not of any disputed facts contained in such public records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "A high degree of indisputability is the essential prerequisite." Fed. R. Evid. 201 advisory committee's note to subdivision (a) of the 1972 proposed rules. Unlike public records and government documents, Defendants' private records are not a source whose accuracy cannot reasonably be questioned. *See, e.g.*, *Martinez v. Mead Johnson & Co., LLC*, No. 5:22-cv-00213-JWH-SHK, 2022 WL 15053334, at *3 (C.D. Cal. Oct. 22, 2022) (denying a request for judicial notice of nutrition labels on the grounds that "[p]ackaging labels are not court documents. Labels can and do change from time to time, so the Court cannot conclude that the renditions that [the defendant] provides are unquestionably accurate representations of the labels that appeared on shelves across California during the relevant period"); *see also Grimes v. Ralphs Grocery Co.*, No. CV 23-9086 TJH (PDX), 2024 WL 5470432, at *3 (C.D. Cal. Aug. 9, 2024) (denying a request for judicial notice where "the contents of the label are neither generally known within the territorial jurisdiction of the Court nor can they be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"). Therefore, judicial notice does not apply here.

   Incorporation-by-reference. The Court next turns to incorporation-by-reference. "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. This doctrine permits a court, when considering a Rule 12(b)(6) motion, to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions . . . .'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999)). Here, Plaintiffs do not question the authenticity of Defendants' proposed Exhibit A. (*See generally* ECF No. 11.) Further, Plaintiffs discuss the nutritional attributes of the Products at length in the Complaint. (*See generally* Compl.) Accordingly, the Court shall consider Defendants' Exhibit A under the doctrine of incorporation by reference.

  **B. Fraud-based Claims**

  Defendants argue Plaintiffs' fraud claims are insufficient because they fail to meet the particularity requirement of Rule 9(b). The Court agrees. "Rule 9(b)'s heightened pleading standard applies to UCL, FAL and CLRA causes of action that 'are grounded in fraud or sound in fraud.'" *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023) (quoting *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011)).

  Here, Plaintiffs fail to successfully allege "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 106 F.4th at 852 (citation modified). It is not enough that the claims on a product's label violate labeling law. *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 162 (D.N.J. 2025) (collecting cases analyzing the role of regulatory requirements in California consumer fraud cases related to food labeling). This Court agrees that FDA regulations alone are insufficient to meet the Rule 9(b) pleading standard. *See, e.g., Trazo v. Nestlé USA, Inc.*, No. 5:12-cv-2272 PSG,

2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013), *on reconsideration,* 113 F. Supp. 3d 1047 (N.D. Cal. 2015) ("While regulatory violations might suggest that these statements might be misleading to a reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the misleading/false advertising prongs of the UCL."); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *16–17 (N.D. Cal. Mar. 14, 2014) (siding with the court in *Trazo* that, where a plaintiff fails to allege that a reasonable consumer would be deceived or that they themselves were deceived, the plaintiff fails to plead fraud with sufficient particularity); *Howard v. Gerber Prods. Co.*, No. 22-cv-04779-VC, 2023 WL 2716583, at *3 (N.D. Cal. Mar. 29, 2023) ("Even relying on the FDA's guidance, it's a step too far to say that a plaintiff can bring a claim sounding in fraud any time a product includes a prohibited nutrient content claim.") Plaintiffs must explain how the statements would be false or misleading to a reasonable consumer, but they do not.

Plaintiffs apparently attempt to allege what is false or misleading about the Products' claims, and why, by claiming the Products' nutrient content claims "deceive and mislead reasonable consumers into believing that the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally." (Compl. ¶ 24.) However, Plaintiffs do not allege how the Products are harmful for children under the age of two and therefore fail to allege the claims' misleading or false nature.

The Ninth Circuit has rejected similarly vague fraud-based claims. In *Davidson*, 106 F.4th 842, the Ninth Circuit affirmed the district court's dismissal for failing to satisfy not only the heightened pleading requirements of Rule 9(b) but also Rule 12(b)(6)'s plausibility pleading standard when the plaintiff alleged only that the products contained a high amount of sugar and sugars can lead to health issues. The district court rightly noted that plaintiffs do not explain at what level sugars become harmful or why levels of sugar in these products could cause harm. *Id.* at 852; *see also Sanchez v. Nurture, Inc.*, No. 5:21-CV-08566-EJD, 2023 WL 6391487, at *7 (N.D. Cal. Sept. 29, 2023) ("[M]any courts in

this district have rejected theories of fraud where Plaintiffs alleged the presence of added sugars rendered a general health-related claim fraudulent.") (citing cases)).

It is not clear what the basis is for Plaintiffs' allegation that the Products' claims are misleading because they harm instead of help. How do they harm? Is it because the Products do not contain all the nutrients they are alleged to have? Plaintiffs seem to make this claim in the Response, but not in the Complaint. (*See* ECF No. 11 at 12.) Is it because these nutrients are not healthy for children? If so, then Plaintiffs must explain what makes the nutrients unhealthy. Is it because the Products have two grams of added sugar? (Compl. ¶ 60.) If so, this too is insufficient without more. *Cf. Howard v. Gerber Prods. Co.*, No. 22-cv-04779-VC, 2024 WL 5264036, at *1 (N.D. Cal. Dec. 31, 2024) (analyzing a complaint under *Davidson* and finding the plaintiffs' claims were insufficiently alleged where they claimed "at what level sugars become harmful" but did not suggest that the levels in the products at issue were "likely to cause harm if babies eat the products once or a few times"). Is it based on the allegation that the exposure to these drinks might lead to less healthy eating habits, a failure to develop gross and fine motor skills, or a failure to develop taste preferences for a mixed diet? (Compl. ¶ 59.) If so, this is insufficient without any allegation that the Products have actually caused any of these harms.

Defendants must have sufficient notice of how the statements are allegedly false or misleading. Plaintiffs claim, "the Products are harmful for children under two both nutritionally and developmentally." (*Id*. ¶ 24.) But without more this fails to meet the requirements of Rule 9(b). Hence, the Court **GRANTS** the Motion to Dismiss to the extent the alleged claims sound in fraud. But, because Plaintiffs may be able to amend to allege additional facts supporting their fraud claims, the Court gives leave to amend. *See* Fed. R. Civ. P. 15(a).

### C. Unlawful Claims

#### 1. Nutrient Content Claims

Defendants argue Plaintiffs fail to state a claim that the labels are unlawful. (ECF No. 8.) "Under the FDA regulations, the general rule is that 'nutrient content claims' are

not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). In addition, "[t]he FDA prohibits most 'nutrient content claims' on food 'intended specifically' for infants and children under two." *Howard v. Hain Celestial Grp., Inc.*, 655 F. Supp. 3d 941, 943 (N.D. Cal. 2023) (citing 21 C.F.R. § 101.13(b)(3)), *reconsideration denied,* No. 22-CV-00527-VC, 2023 WL 5333028 (N.D. Cal. Aug. 17, 2023). "The FDA is wary of these claims because 'many consumers have . . . limited knowledge' about the quantity of nutrients they should consume every day, so statements 'declaring' that a product contains a certain amount of nutrients can be 'misleading.'" *Howard*, 655 F. Supp. 3d at 943 (citing 56 Fed. Reg. 60421, 60426 (Nov. 27, 1991)). This is "all the more true if the food is intended for young children." *Howard*, 655 F. Supp. 3d at 943. Thus, "[c]laims [on labels] are unlawful if they constitute a nutrient content claim and do not comply with the applicable regulations for such claims." *Victor*, 2014 WL 1028881, at *14.

A nutrient content claim is a statement about a food product that directly, or by implication, characterizes the level of a nutrient in the food. *Reid*, 780 F.3d at 959; 21 C.F.R. § 101.13(b). "'An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient the food, e.g., 'low sodium' or 'contains 100 calories.'" *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1115 (N.D. Cal. 2022). An implied "nutrient content claim" is one that "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams [] of fat')." *Id.* (citing 21 C.F.R. § 101.13(b)(2)).

However, a simple statement that a product has certain nutrients or has antioxidants is not sufficient to show unlawfulness. *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *5 (N.D. Cal. July 13, 2015) ("Nutrient content claim requirements only apply where a product label characterizes the level (as opposed to existence) of a nutrient."); *Starratt v. Fermented Scis., Inc.*, No. 22-cv-03895-HSG, 2023 WL 359500, at *4 (N.D. Cal. Jan. 23, 2023) ("Statements about the mere existence of nutrients are not regulated.").

Defendants argue first that the statements complained of: "IMMUNE HEALTH Dual Prebiotics & Vitamins," "Supports BRAIN DEVELOPMENT Omega-3 DHA & Iron," and "22 NUTRIENTS to help support growth" merely state the existence of the nutrients not the level of the nutrients. However, all three statements couple the existence of nutrients with some claim that the listed nutrients are helpful for health. The first couple "prebiotics and vitamins" with the suggestion that this will support "Immune health." The second suggests that the existence of "Omega-3 DHA and Iron" will "support brain development." And the third couples a statement about the existence of "22 nutrients" with the suggestion that this will "help support growth." Thus, the statements are all implied nutrient content claims.

### 2.     Intended for Children under the Age of Two

Defendants argue next that the Products are not specifically intended for children under two years of age. The Complaint alleges the Products are specifically targeted for "toddlers" and children "1+ Years." (Compl. ¶ 20.) Defendants agree that the "well-understood meaning of a toddler is a child 'between one and three years old.'" (ECF No. 8 at 16.) In addition, the Complaint alleges the Products are primarily found in the baby food aisles of grocery stores next to the infant formula (at Defendants' direction). (Compl. ¶ 41.) These are sufficient facts to plausibly suggest the products are specifically or primarily for children under two. Although there may be some children included over the age of two in the definition of "toddlers," this is not sufficient to defeat the claims at this stage of the proceedings.[1]

### 3.     Fortification Policy

Defendants argue there are insufficient allegations to support the claim that the labels violate the FDA's fortification policy. "A relative claim using the terms 'more,' 'fortified,'

---

[1] To the extent Defendants argue Plaintiffs' children will age out of the allegations regarding children under the age of two, this Court agrees with Judge Davila that "such an argument would appear to run afoul of the 'capable of repetition, yet evading review' exception." *Sanchez*, 2023 WL 6391487, at *9 (quoting *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007)).

enriched,' 'added,' 'extra,' and 'plus'" may be used only if it is in keeping with the FDA fortification policy. 21 C.F.R. § 101.54(e)(1). The FDA expressly discourages the indiscriminate addition or fortification of nutrients to foods, which "could result in over-or underfortification in consumer diets." *Starratt*, 2023 WL 359500, at *4 (citing 21 C.F.R. § 104.20).

The Court agrees the statement "[it] has Omega-3 DHA and Iron to help nourish your toddler's brain development, plus dual prebiotics and vitamins, including vitamin C and zinc to help support immune health," (Compl. ¶ 44; Compl., Ex. 2), suggests that the Products have been fortified with these nutrients. Therefore, the Complaint sufficiently alleges that the labels are unlawful because they fail to comply with the FDA's fortification policy.

### 4. First Amendment Claims

Defendants argue that the alleged nutrient content claims are only potentially misleading, not actually deceptive, and, therefore, restriction of the claims violates Defendants' First Amendment rights. The First Amendment protects commercial speech from unwarranted governmental regulation, although it is a lesser protection than other constitutionally guaranteed expression. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980). If the speech concerns lawful activity and is not misleading then it falls within the ambit of the First Amendment. *Id.* at 566. The Court must then assess whether the governmental regulation advances a governmental interest, whether that governmental interest is substantial, and whether the regulation is not more extensive than is necessary to serve that interest. *Id.*

"[T]he Supreme Court has distinguished between 'inherently misleading' speech and 'potentially misleading' speech." *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1107 (9th Cir. 2004) (citing *In re R. M. J.*, 455 U.S. 191, 202–03 (1982)). If the advertising is inherently likely to deceive, or where the record indicates the particular method of advertising has been deceptive, there is no First Amendment protection. *Am. Acad. of Pain Mgmt.*, 353 F.3d at 1107. However, if the advertising is only "potentially misleading," "in

other words, 'if the information also may be presented in a way that is not deceptive,' the speech regulation must satisfy the remaining three factors specified in *Central Hudson*." *Id.* (quoting *In re R. M. J.*, 455 U.S. at 203).

This argument is ill-suited to a Motion to Dismiss under Rule 12(b)(6). As discussed above, Plaintiffs have adequately alleged that the statements were unlawful in violation of Federal Regulations. Additionally, Plaintiffs allege the labels deceived the named Plaintiffs. (Compl. ¶¶ 72–75, 78–81, 84–87.) Whether this is sufficient to constitute "inherently misleading speech" is better suited to a Motion for Summary Judgment. Furthermore, whether the policy furthers a substantial governmental interest and is narrowly tailored to this interest requires assessment of additional facts. The Complaint alleges a substantial governmental interest in protecting young children from unsupported claims. (*Id.* ¶¶ 52, 54.) At this stage of the proceedings, the Court finds this is sufficient.

Therefore, the Court denies the Motion to Dismiss to the extent it asserts the FDA rules relevant to Plaintiffs' claims violate the First Amendment.

### D. Former Price Advertising Claim

Defendants claim the Complaint fails to plead a former price advertising claim under California Business and Professions Code § 17501. (ECF No. 8 at 23.) Plaintiffs concede there is a scrivener's error in the Complaint and that they "should have listed the code section as Bus. & Prof. Code § 17500, not § 17501." (ECF No. 11 at 24–25.) Hence, the Court dismisses the Sixth Cause of Action for a violation of California Business and Professions Code Section 17501 with leave to amend.

### E. Standing for Injunctive Relief

"When a plaintiff seeks injunctive relief, she must have standing to do so." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1007 (N.D. Cal. 2020) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)). "[M]isled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief." *Kimberly-Clark*, 889 F.3d at 961. Consumers may do so with a "plausible allegation[] that [plaintiff] will be unable to rely on the product's advertising or labeling in the future, and

so will not purchase the product although she would like to." *Id.* at 970. Similarly, the threat of future harm might be the consumer's plausible allegations that she might purchase the products in the future if she reasonably but incorrectly assumes the product was improved. *Id.* If plaintiffs allege they are likely to purchase the products in the future, that is likely sufficient for standing. *Anderson*, 500 F. Supp. 3d at 1007.

However, in this case, Plaintiffs make no representation about their likelihood of purchasing the Products in the future. In fact, all of the allegations pertain to past harm. (*See* Compl. ¶¶ 75, 81, 87 ("Had Defendants not unlawfully and misleadingly labeled the Products, Plaintiff . . . would not have purchased them, or, at a very minimum, she would have paid less for the products.").) Because Plaintiffs fail to allege any facts that support likelihood of future harm, the Court grants the Motion to Dismiss Plaintiffs' request for injunctive relief for lack of standing.

## IV. CONCLUSION

For the reasons stated above, the Court:

1. **GRANTS** the Motion to Dismiss Count Four of the Complaint, alleging common-law fraud, deceit, or misrepresentation;

2. **GRANTS** the Motion to Dismiss Count Six of the Complaint;

3. **GRANTS** the Motion to Dismiss the remaining counts to the extent they rely on allegations of fraud;

4. **DENIES** the Motion to Dismiss the remaining counts to the extent they rely on allegations of unlawfulness;

5. **GRANTS** the Motion to Dismiss the request for injunctive relief for lack of standing.

Pursuant to Rule 15(a)(2), the Court grants Plaintiffs leave to amend. Any amended pleading must be filed **on or before August 1, 2025**.

IT IS SO ORDERED.

**DATED: July 10, 2025**

Hon. Cynthia Bashant, Chief Judge
United States District Court